# EXHIBIT A

# SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is entered into among the United States of America, acting through the United States Department of Justice and on behalf of the United States Department of Education (collectively the "United States"), North Greenville University ("NGU"), and Maurice Shoe ("Shoe") (hereafter collectively referred to as "the Parties"), through their authorized representatives.

## RECITALS

A. NGU is a nonprofit university located in South Carolina, which enrolls students who receive federal student aid funds under Title IV of the Higher Education Act (HEA). *See* 20 U.S.C. § 1094(a); 34 C.F.R. § 668.14(a)(1).

B. On May 16, 2018, Relator Shoe filed a *qui tam* action in the United States District Court for the District of South Carolina captioned *United States ex rel. Shoe v. North Greenville University, et al.*, pursuant to the *qui tam* provisions of the False Claims Act, 31 U.S.C. § 3730(b) (the Civil Action). Relator alleges that NGU compensated Joined, Inc. ("Joined"), for student recruitment services in amounts determined by the revenue that NGU received from students who enrolled based on Joined's recruitment efforts, including students who received Title IV student aid. Relator alleges that the payments to Joined by NGU constitute incentive-based compensation prohibited by 20 U.S.C. § 1094(a)(20) and 34 C.F.R. § 668.14(b)(22).

C. The United States contends that it has certain civil claims against NGU arising from NGU's payment of incentive-based compensation to Joined for the enrollment of students who received Title IV student aid during the period from March 5, 2014, through August 13, 2015. That conduct is referred to below as the "Covered Conduct."

D. This Settlement Agreement is neither an admission of liability by NGU nor a concession by the United States that its claims are not well founded.

E. Relator claims entitlement under 31 U.S.C. § 3730(d) to a share of the proceeds of this Settlement Agreement and to Relator's reasonable expenses, attorneys' fees and costs.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation of the above claims, and in consideration of the mutual promises and obligations of this Settlement Agreement, the Parties agree and covenant as follows:

TERMS AND CONDITIONS

1. NGU shall pay to the United States $2,500,000.00 ("Settlement Amount"), of which $217,143 is restitution. NGU shall pay $2,500,000.00 within 30 days of the Effective Date of this Agreement. Payment shall be made by electronic funds transfer pursuant to written instructions to be provided by the Civil Division of the Department of Justice.

2. Conditioned upon the United States receiving the Settlement Amount from NGU and as soon as feasible after receipt, the United States shall pay $375,000 to Relator by electronic funds transfer.

3. Subject to the exceptions in Paragraph 4 (concerning excluded claims) below, and conditioned upon NGU's full payment of the Settlement Amount, the United States releases NGU from any civil or administrative monetary claim the United States has for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801-3812; or the common law theories of breach of contract, payment by mistake, unjust enrichment, and fraud.

4. Subject to the exceptions in Paragraph 4 below, and conditioned upon NGU's full payment of the Settlement Amount, Relator, for himself and for his heirs, successors, attorneys,

agents, and assigns, releases NGU from any civil monetary claim the Relator has on behalf of the United States for the Covered Conduct under the False Claims Act, 31 U.S.C. §§ 3729-3733.

5. Notwithstanding the releases given in paragraphs 2 and 3 of this Agreement, or any other term of this Agreement, the following claims of the United States are specifically reserved and are not released:

    a. Any liability arising under Title 26, U.S. Code (Internal Revenue Code);

    b. Any criminal liability;

    c. Except as explicitly stated in this Agreement, any administrative liability, including the suspension and debarment rights of any federal agency;

    d. Any liability to the United States (or its agencies) for any conduct other than the Covered Conduct;

    e. Any liability based upon obligations created by this Agreement; or,

    f. Any liability of individuals;

6. Relator and his heirs, successors, attorneys, agents, and assigns shall not object to this Agreement but agree and confirm that this Agreement is fair, adequate, and reasonable under all the circumstances, pursuant to 31 U.S.C. § 3730(c)(2)(B). In connection with this Agreement and this Civil Action, Relator and his heirs, successors, attorneys, agents, and assigns agree that neither this Agreement, any intervention by the United States in the Civil Action in order to dismiss the Civil Action, nor any dismissal of the Civil Action, shall waive or otherwise affect the ability of the United States to contend that provisions in the False Claims Act, including 31 U.S.C. §§ 3730(d)(3) and 3730(e), bar Relator from sharing in the proceeds of this Agreement.

7. Relator, for himself, and for his heirs, successors, attorneys, agents, and assigns, releases NGU, and its officers, agents, and employees, from any liability to Relator arising from

the filing of the Civil Action and/or the Covered Conduct except that Relator fully reserves the right to seek attorneys' fees and costs under 31 U.S.C. § 3730(d).

8. NGU waives and shall not assert any defenses NGU may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Agreement bars a remedy sought in such criminal prosecution or administrative action.

9. NGU fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that NGU has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof.

10. NGU releases Relator from any liability to NGU arising from the filing of the Civil Action and/or the Covered Conduct.

11. a. Unallowable Costs Defined: All costs (as defined in the Federal Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of NGU, and its present or former officers, directors, employees, shareholders, and agents in connection with:

    (1) the matters covered by this Agreement;

    (2) the United States' audit(s) and civil investigation(s) of the matters covered by this Agreement;

    (3) NGU's investigation, defense, and corrective actions undertaken in response to the United States' audit(s) and civil investigation(s) in

connection with the matters covered by this Agreement (including attorney's fees);

(4) the negotiation and performance of this Agreement;

(5) the payment NGU makes to the United States pursuant to this Agreement and any payments that NGU may make to Relator, including costs and attorneys fees,

are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

b. Future Treatment of Unallowable Costs: Unallowable Costs will be separately determined and accounted for by NGU, and NGU shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

c. Treatment of Unallowable Costs Previously Submitted for Payment: If applicable, within 90 days of the Effective Date of this Agreement, NGU shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by NGU or any of its subsidiaries or affiliates from the United States. NGU agrees that the United States, at a minimum, shall be entitled to recoup from NGU any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment. The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine NGU's books and records and to disagree with any calculations submitted by NGU or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by NGU, or the effect of any such Unallowable Costs on the amount of such payments.

12. NGU agrees to cooperate fully and truthfully with the United States' investigation of individuals and entities not released in this Agreement. Upon reasonable notice, NGU shall encourage, and agrees not to impair, the cooperation of its directors, officers, and employees, and shall use its best efforts to make available, and encourage, the cooperation of former directors, officers, and employees for interviews and testimony, consistent with the rights and privileges of such individuals. NGU further agrees to furnish to the United States, upon request, complete and unredacted copies of all non-privileged documents, reports, memoranda of interviews, and records in its possession, custody, or control concerning any investigation of the Covered Conduct that it has undertaken, or that has been performed by another on its behalf.

13. This Agreement is intended to be for the benefit of the Parties only.

14. Upon receipt of the payment described in Paragraph 1, above, the United States will file a notice of partial intervention and settlement in the Civil Action, which will be accompanied by a Notice of Voluntary Dismissal executed and filed by the Relator and the United States pursuant to Rule 41(a).

15. Each Party shall bear its own legal and other costs incurred in connection with this matter, including the preparation and performance of this Agreement, except that Relator fully reserves and does not waive the right to seek attorneys' fees and costs from NGU pursuant to 31 U.S. Code § 3730(d)(1) and 31 U.S. Code § 3730(d)(2). The parties will endeavor to reach mutual agreement regarding such fees and costs but request that the Court retain jurisdiction to adjudicate any such dispute should agreement not be reached.

16. Each party and signatory to this Agreement represents that it freely and voluntarily enters in to this Agreement without any degree of duress or compulsion.

17. This Agreement is governed by the laws of the United States. The exclusive jurisdiction and venue for any dispute relating to this Agreement is the United States District Court for the District of South Carolina. For purposes of construing this Agreement, this Agreement shall be deemed to have been drafted by all Parties to this Agreement and shall not, therefore, be construed against any Party for that reason in any subsequent dispute.

18. This Agreement constitutes the complete agreement between the Parties. This Agreement may not be amended except by written consent of the Parties.

19. The undersigned counsel represent and warrant that they are fully authorized to execute this Agreement on behalf of the persons and entities indicated below.

20. This Agreement may be executed in counterparts, each of which constitutes an original and all of which constitute one and the same Agreement.

21. This Agreement is binding on NGU's successors, transferees, heirs, and assigns.

22. This Agreement is binding on Relator's successors, transferees, heirs, and assigns.

23. All parties consent to the United States' disclosure of this Agreement, and information about this Agreement, to the public.

24. This Agreement is effective on the date of signature of the last signatory to the Agreement (Effective Date of this Agreement). Facsimiles of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

(Signatures to Follow)

## THE UNITED STATES OF AMERICA

DATED: 12/14/18 BY: _____
Zach Williams
Trial Attorney
Commercial Litigation Branch
Civil Division
United States Department of Justice

BY: _____
Stanley Ragsdale
Assistant United States Attorney
District of South Carolina
United States Department of Justice

8

NGU – DEFENDANT

DATED: 12.14.18    BY: _____
                       Gene C. Fant, Jr., President & CEO


DATED:_____BY: _____
                       William C. Tyler, Chairman, Board of Trustees


DATED:_____BY: _____
                       Sandra Miller
                       Counsel for NGU

<u>NGU – DEFENDANT</u>

DATED:_____ BY: _____
                                              Gene C. Fant, Jr., President & CEO

DATED: 12-14-18 BY: *[signature]*
                                              William C. Tyler, Chairman, Board of Trustees

DATED:_____ BY: _____
                                              Sandra Miller
                                              Counsel for NGU

NGU – DEFENDANT

DATED:_____ BY: _____
Gene C. Fant, Jr., President & CEO


DATED:_____ BY: _____
William C. Tyler, Chairman, Board of Trustees


DATED: 12/14/18 BY: *Sandra L. M. Miller*
Sandra Miller
Counsel for NGU
*Womble Bond Dickinson (US) LLP*

9

Maurice Shoe - RELATOR

DATED: 12/14/18    BY: /s/ Maurice Shoe
                       Maurice Shoe


DATED: 12/14/18    BY: /s/ Justin S. Brooks
                       Justin S. Brooks
                       Guttman, Buschner & Brooks PLLC
                       Counsel for Maurice Shoe